Filed 7/15/13  In re Billy D. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re BILLY D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D062978 |
| Plaintiff and Respondent, | (Super. Ct. No. J231471) |
| v. | |
| BILLY D., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Browder A. Willis, III, Judge.  Affirmed.

Lillian Y. Lim, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Following a contested jurisdictional hearing on a petition under Welfare and Institutions Code section 602 concerning Billy D., the juvenile court made a true finding he had made a criminal threat to a classmate, a felony. (Pen. Code,[1] § 422.) Billy was placed on probation.

Billy appeals, contending no sufficient evidence supports the true finding that the classmate ever heard or was told that Billy made a threatening statement toward him that was unconditional in nature. Instead, third party classmates relayed to the victim what Billy said about him, and later, Billy explained to an investigating police officer that he told two of his friends that he had a knife that he would use for stabbing and scaring the victim, and he expected that his friends would spread his threat around school. Billy challenges the admission of this evidence as violative of hearsay rules and his Sixth Amendment rights of confrontation.

We find there is sufficient evidence to establish that Billy made a criminal threat that was communicated, it was unconditional in nature, and there was no prejudicial evidentiary error. The judgment and true finding must be affirmed.

STATEMENT OF FACTS

In February 2012, Billy and Christopher G. (Christopher) were both students at a La Mesa middle school. The morning of February 24, Christopher talked to Billy, to say that he was upset because he heard Billy had been saying rude things about him, such as

---

1    All further statutory references are to the Penal Code unless otherwise indicated.

name calling and criticizing his choice in music.  Billy did not seem interested in sorting things out, as Christopher was requesting.

Later that day, a crowd formed in the boys' gym class while Billy was telling them that he would use a knife on Christopher if Christopher tried to fight with him, such as if Christopher used a police baton that he supposedly had.  Christopher's friend "Chris" told him that Billy had a knife in his backpack.  Christopher was notified by "some other students that I didn't know" that Billy was going to try to stab him after school, while Christopher was on his way home.  Christopher·felt worried, defenseless and scared of being hurt by Billy, so he asked his brother to pick him up from school for the next week or two, to avoid Billy, and he also changed his walking route home from school for the same reason.

Christopher was interviewed on February 24 by La Mesa police officer Jennifer McNamara.  Christopher told her that he began shaking with fear as soon as he heard of Billy's threat.   During this interview, Officer McNamara noticed that Christopher's legs and hands were shaking, he seemed to have been crying (puffy and bloodshot eyes), and his voice was unsteady.

Next, Officer McNamara interviewed Billy, asking whether he had told anyone that he had a knife with him or that he wanted to stab Christopher.  Billy said he told two friends, Kyle and "Chris," that he had a knife and that he would use it to stab Christopher, "just to scare him," and he anticipated his friends would go around kind of spreading the word about those statements.  According to testimony from Officer McNamara, Billy did not use any conditional language about using the knife "if" or "only if" something

3

happened. Billy told her he did not believe the rumor that Christopher had a police baton, but he felt threatened by him.

School officials searched Billy's belongings and no knife was found. Although Officer McNamara consulted the school secretary and staff, she could not identify any other witnesses.

Billy was arrested and this petition charged him with a felony criminal threat. At the jurisdictional hearing, the court ruled upon motions in limine regarding hearsay evidence, and allowed testimony to be introduced about statements from unavailable student witnesses, if they pertained to an operative fact and were presented for a non-hearsay purpose.

Christopher and the investigating officer testified, as did another student, Gregory L. Gregory told the court he was around while Billy was talking to the others in gym class that day, and Billy told him that he planned to pull out his knife, only if Christopher tried to fight with him. The crowd was talking quietly so that Christopher, who was standing in line nearby, did not hear what Billy was saying. Gregory did not report this to Christopher.

After hearing argument, the juvenile court made a true finding and placed Billy on probation. He appeals.

DISCUSSION

I

*INTRODUCTION AND STANDARDS*

Billy contends there is insufficient evidence to support the true finding on the criminal threat charge, because the prosecution failed to show he directly or actually communicated with Christopher, to convey any unconditional threat. (*People v. Felix* (2001) 92 Cal.App.4th 905, 913-914 (*Felix*).) Generally, substantial evidence review requires this court to review the entire record, viewing the evidence in the light most favorable to the trial court's decision. We draw all reasonable inferences in favor of the lower court's findings, and make no credibility determinations, nor do we reweigh the relative strength of competing evidence. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) In juvenile proceedings, the same standard of review used for appeals from adult criminal judgments applies. (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1088; *In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1136.)

Before applying those substantial evidence rules to the record before us, we first address the merits of Billy's arguments that the trial court erroneously admitted into evidence some out-of-court statements made by unidentified persons at school, as establishing the fact of making the threat. We consider hearsay principles and his claims of violation of his witness confrontation rights. (*Crawford v. Washington* (2004) 541 U.S. 36, 51 (*Crawford*).) Additionally, we discuss his theory that his own statements about the offense were not adequately corroborated by independent evidence (corpus delicti).

II

*ANALYSIS*

A.  Requirement of Actual Communication to Victim of Unconditional Threat

The language of section 422 prohibits the making of a threat that is so "unequivocal, unconditional, immediate, and specific" that it conveys to the victim an "immediate prospect of execution."  Even though the person making the threat must have the specific intent that it be taken as a threat, he need not have any "intent of actually carrying it out."  (*In re David L.* (1991) 234 Cal.App.3d 1655, 1658 (*David L*).)  As a consequence of the threatening statement, the intended recipient must reasonably feel "sustained fear" for his safety or his immediate family's safety.  (*Ibid.*)

It is well established that "section 422 does not in terms apply only to threats made by the threatener personally to the victim nor is such a limitation reasonably inferable from its language.  The kind of threat contemplated by section 422 may as readily be conveyed by the threatener through a third party as personally to the intended victim.  Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated.  Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed."  (*David L., supra,* 234 Cal.App.3d 1655, 1659.)

When a trial or appellate court evaluates the showing made at trial about the required specific intent, "the setting in which the defendant makes the remarks must be considered."  (*Felix, supra*, 92 Cal.App.4th 905, 913-914.)  " '[S]ection 422 demands that the purported threat be examined "on its face and under the circumstances in which it was

6

made." ' [Citation.]" (*Ibid*.)  For example, evidence about a "climate of hostility" between the minor defendant and the victim may support inferences of intent to threaten, and proof of the manner in which the statements were made can also support an inference the defendant intended that the victim would feel threatened.  (*David L., supra,* 234 Cal.App.3d 1655, 1659.)

In a section 422 analysis, "conditionality is only one circumstance to be considered in the overall analysis of whether the threat is a true threat, and is not a bright line separating actionable threats from protected ones."  (*People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1162 (*Stanfield*).)  The circumstances surrounding the threat may establish its nature as a true threat, regardless of any grammatical conditions within its text.  (*Ibid.*)  Based on these statutory standards, we examine the sufficiency of the challenged evidence.

### B.  Hearsay Rules and Operative Facts

At trial, Billy's counsel moved to exclude any statements of unavailable witnesses on hearsay grounds.   In response, the prosecutor argued that the statements of unavailable witnesses were not hearsay, and would instead be used as an operative fact to prove an element of the offense.  In denying the motion, the court ruled the statements were not being offered for the truth of the matter, but to establish "the fact that there was language that would lead the victim to be in fear."  Billy claims evidentiary error, in that this allowed the prosecution "to fill an evidentiary gap with speculation."  (*Felix, supra*, 92 Cal.App.4th 905, 912.)  We address this argument under a standard of abuse of discretion.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

7

" 'There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts are admissible not as hearsay but as original evidence.' [Citations.] [¶] In these situations, the words themselves, written or oral, are 'operative facts,' and an issue in the case is whether they were uttered or written." (1 Witkin, Cal. Evidence (5th ed. 2012) Hearsay, § 32, p. 825.) An example of such an admissible operative fact is an oral conversation that constituted a criminal conspiracy or bribery agreement. (*People v. Collier* (1931) 111 Cal.App. 215, 240.) "Thus, when, as a part of the agreement, one or more of the conspirators undertakes to ask for a bribe, one or more agrees to accept a bribe, one or more agrees to do or not to do some act for the purpose of effectuating the compact, and one or more of the conspirators gives his assent to the compact either by express words or by actions from which such assent might be implied, evidence of such facts . . . is competent evidence of the acts or declarations which form 'a part of the transaction' which is in dispute." (*Id.* at pp. 240-241; 1 Witkin, Cal. Evidence, *supra*, § 36, p. 829.)

Likewise in *People v. Patton* (1976) 63 Cal.App.3d 211, 218-219, the court ruled that a police-made tape recording of a pimp-panderer, talking about his offer to engage a young woman as a prostitute, was properly admissible nonhearsay, because his words "constituted the substantive offense with which he was charged [encouraging a woman to become a prostitute]." (*Id.* at p. 219; also see *People v. Dell* (1991) 232 Cal.App.3d 248, 258 [words of solicitation for prostitution are "operative facts" or "verbal acts"].)

8

Using this line of analysis, we conclude the trial court correctly admitted the unidentified or unavailable students' out-of-court statements made to Christopher as evidence to show the operative facts of the criminal threat. The statements referred to by the testifying witness were used for this nonhearsay purpose.

## C. Witness Confrontation Analysis

Alternatively, Billy contends it was a violation of his Sixth Amendment witness confrontation rights when the trial court admitted into evidence, over his objection, references to the out-of-court statements made by unidentified classmates. Determining the scope of these Sixth Amendment protections is a question of law decided on independent review. (See *People v. Cage* (2001) 40 Cal.4th 965, 970, 984, 991.)

A defendant has a right to confront those " 'who "bear testimony" against him.' " *(Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 309.) Statements that " 'bear testimony' " and are testimonial are those " 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " (*Crawford, supra,* 541 U.S. at pp. 51-52.)

Billy objects to the use of statements by unidentified students that Christopher repeated in court, but he does not recognize that those were nontestimonial in nature. There is no indication in the record that the conversational buzz at the gym class about Billy having a knife and planning to use it on Christopher, or its follow up by "Chris," occurred in the presence of governmental or school officials, nor in anticipation of litigation. (See *People v. Jefferson* (2008) 158 Cal.App.4th 830, 842-844 [friends'

9

conversation is not testimonial]; *People v. Cervantes* (2004) 118 Cal.App.4th 162, 174 [codefendant's statement to a neighbor about medical treatment not testimonial].) As a matter of law, this argument lacks merit.

### D. Substantial Evidence Analysis

Generally, in making his arguments, Billy lists the facts in the light most favorable to his case and relies on selective portions of the picture. Only lip service is paid to how the proper standard of review should apply here. However, section 422 clearly requires that the trier of fact consider whether, under all the circumstances of the making of the statements, they were so unequivocal, unconditional, immediate, and specific as to convey to the victim that the defendant had such a "gravity of purpose and an immediate prospect of execution of the threat," to cause that person to reasonably be placed in sustained fear for safety. (*In re Ricky T., supra*, 87 Cal.App.4th 1132, 1136.)

This record shows that the circumstances in which Billy's statements were made included Christopher's previous, unsuccessful approach to Billy "to sort things out." Within a short period of time, classmates were quietly discussing Billy's claimed or perceived possession of a knife and his planned use of it to stab Christopher. Billy communicated this news to other classmates with the intention that they would kind of spread it around. Christopher was then approached by his friend "Chris" and students that he did not know, who told him about the knife plan. Such secondhand communications of a threat, through fellow students with encouragement to them to spread the word to the victim, fully support reasonable inferences that there was a hostile

10

climate brewing and that Billy intended to use these intermediaries to convey a threat to Christopher. (*David L., supra,* 234 Cal.App.3d 1655, 1658.)

Billy, however, argues it would be speculation "to conclude that unidentified students attributed specific threatening statements to Billy in sharing their conclusion Billy was going to try and stab Christopher." He also points out that Gregory testified that Billy said he would use a knife only if Christopher tried to fight him, and so that language arguably did not convey a direct threat. Also, Gregory said he never told Christopher about that conversation with Billy.

Other equally relevant circumstances were proven by testimony from Christopher and also by the admissions made by Billy to the investigating officer, that he told two friends in particular, Kyle and "Chris," that he was going to stab Christopher and he wanted them to spread the threat around. This conclusion is consistent with the court's views in *Felix, supra*, 92 Cal.App.4th 905, that an out-of-court conversation (between a defendant's therapist and defendant's former girlfriend), could have been offered and admitted not for the truth of the matter asserted (i.e., that a threat was made to the girlfriend), but to show whether in fact a communication of the threat occurred: "The trial judge could have determined the relevance of this disputed preliminary fact by way of an Evidence Code section 402 hearing where [defendant's therapist] could have testified out of the presence of the jury, about what he said to [the former girlfriend]." (*Felix, supra*, at p. 912.) The out-of-court statements were properly used to show this communication occurred.

11

There was additional relevant and probative evidence from the investigating officer, who observed when talking with Christopher that he appeared physically to be in a state of fearfulness, as a result of what the fellow students told him about the knife use threat. (*Felix, supra*, 92 Cal.App.4th 905, 912.) All of this amounted to sufficient evidence outlining the factual setting in which a defendant's remarks were made, to show the context in which his words were uttered and conveyed. "The prosecution must prove sufficient facts to show that the defendant's words fell squarely within section 422." (*Felix*, *supra*, at p. 915.) With respect to the successful communication of an unconditional threat, the trial court had a reasonable basis in the evidence to make a true finding on the charge.

Moreover, we reject Billy's claim there is insufficient evidence, apart from his own statements, to show the corpus delicti of the criminal threat. The standard of review applicable to such a challenge is the " 'slight or prima facie' " standard. (*People v. Jennings* (1991) 53 Cal.3d 334, 368.) The main issues are whether there is some independent indication in the evidence as a whole that the charged crime actually happened, and therefore, "that the accused is not admitting to a crime that never occurred." (*Ibid.*; *People v. Ochoa* (1998) 19 Cal.4th 353, 405.)

Here, the prosecution did not rely solely on Billy's extrajudicial statements, and supplied other evidence raising an inference of his criminal conduct. In addition to the admissions that Billy made to the investigating officer, Christopher testified about how his friend Chris and "some other students that I didn't know came up to me, saying that Billy was going to try to--that Billy was going to try to stab me after school, on my way

12

home."  Christopher reacted with visible fear symptoms and by calling his brother to pick him up from school or changing his route.  There was sufficient evidence that Christopher was led to understand the "gravity of purpose and an immediate prospect of execution" of Billy's threat.  (*Stanfield, supra,* 32 Cal.App.4th at p. 1157.)

Moreover, the court was entitled to make credibility determinations in the case and to give the evidence the weight it deemed appropriate.  (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1088-1089.)  There were no hearsay rule violations, and the nontestimonial evidence was properly admitted.  The evidence in this record is sufficient to support the true finding.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

HALLER, J.

13