[Crim. No. 11057. Third Dist. Feb. 25, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER DUANE LADD, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Carla J. Caruso, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—Defendant was convicted of second degree murder (Pen. Code, § 187) with use of a firearm (Pen. Code, § 12022.5). He appeals from the judgment committing him to prison. We shall affirm.

This is the second opinion in this case, a rehearing having been granted after the first decision.

The vacated opinion was rendered after the court had advised counsel by letter that the case would be submitted for decision unless within 10 days a written request for oral argument was received. Having received no such request, the court decided the case on July 31, 1981. On August 14, 1981, defendant's counsel, the State Public Defender, petitioned for rehearing, asserting that a written request for oral argument had been timely prepared and "placed in [this court's] brief box in [the State Public Defender's] office to be delivered to [the Clerk of this] court." Counsel for the People solved the mystery of the errant letter, advising the court that it had somehow been missent to the office of the Attorney General in San Francisco. Rehearing was granted.

In the petition for rehearing counsel also sought to secure a different panel of the court to decide the case than participated in the vacated decision in which the judgment of conviction had been unanimously affirmed. The issue was raised in footnote 2 of the petition for rehearing, set out here in its entirety: "Since Justices Paras, Puglia and Regan have already decided this case, another panel should be assigned to reconsider it pursuant to Code of Civil Procedure sections 170 and 170(a). See also *People v. Dougherty* (1980) 102 Cal.App.3d 270, 275-276."[1]

The allegations in footnote 2 are not verified (see Code Civ. Proc., § 170, subd. (d)). None of the justices mentioned in footnote 2 responded in any fashion to the charge of disqualification. (By the time the petition for rehearing was filed, Justice Paras had resigned from the court.)

At oral argument counsel pressed for a ruling on his "motion to disqualify." He was informed that it was not verified and was therefore denied.

Counsel then asserted the panel lacked jurisdiction to hear the case, charging that the vacated opinion had not complied with article VI, section 14 of the California Constitution (requiring decisions that determine causes to be "in writing with reasons stated"). Enlarging

---

[1]*People v. Dougherty, supra,* was deleted from the Official Reports on direction of the Supreme Court by order dated August 14, 1981.

upon this theme, counsel stated: "[The vacated opinion] did not deal in any manner with my allegation that Mr. Ladd was not provided with effective assistance of counsel. It was a shameful opinion and I think that the justices having decided it should not attempt to redecide it, having given it such short shrift initially."

■ The procedure to disqualify a judge for cause is found in Code of Civil Procedure section 170 which provides, inter alia, that a statement of disqualification "shall be verified by oath in the manner prescribed by Section 446 [Code Civ. Proc.] for the verification of pleadings." (Code Civ. Proc., § 170, subd. (d).) If such a statement is not verified, it is formally defective and may be stricken out or disregarded (*Bompensiero v. Superior Court* (1955) 44 Cal.2d 178, 183 [281 P.2d 250]).

Code of Civil Procedure section 170a, cited in footnote 2 of the petition for rehearing, prohibits the same judge from sitting or acting in a cause at more than one level in its vertical progression through the judicial hierarchy. It is so obviously inapplicable to rehearings in an appellate court that further discussion of its lack of relevance in the present context is supererogatory.

Before we consider the merits of this appeal a few remarks about defendant's opening brief are in order. Two contentions are set forth in the headings which appear in the topical index and are repeated in the body of the brief:

"I. *Mr. Ladd was denied his right to appellate review by the stipulation of counsel, at the court's behest, that the instructions not be reported.*

"II. *The trial court's failure to instruct the jury not to view television broadcasts or read newspaper articles pertaining to the trial constituted error.*"

It will be observed that the headings in defendant's brief do not identify "ineffective assistance of counsel" as a point that is raised in the brief, nor can it be said that heading "I" is even elliptically descriptive of that subject matter, a strange phenomenon indeed in an era when, from the perspective of an appellate court, it appears that "ineffective assistance of counsel" is programmed into every word processing unit in the office of every lawyer practicing criminal appellate defense. In the

argument portion of defendant's brief the discussion under heading "I" occupies 10 full pages. The argument is devoted almost entirely to the claimed error of the trial court in so acting as to deprive defendant of the right to appellate review. In fairness to counsel, however, it must be conceded that buried in the middle of this portion of the argument, without separate identification by subheading or otherwise, is the following passage: "Even if a stipulation by counsel could be considered a waiver of the right to a record on appeal it was improper for Mr. Ladd's counsel to so stipulate under the circumstances. There was no possible tactical basis for that decision by trial counsel as it could only work to his client's detriment. Absent a record there is no way of knowing on appeal how the instructions were actually presented to the jury. Consequently, the trial counsel's offhand decision to stipulate away his client's right undoubtedly amounts to ineffective assistance of counsel under *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]."

Rule 15(a), California Rules of Court, requires that "Each point in a brief shall appear separately under an appropriate heading, with subheadings if desired. Such headings need not be technical 'assignments of errors' but should be concise headings which are generally descriptive of the subject matter covered . . . ."

While we do not regard defendant's departure from the form required by rule 15(a) as a particularly egregious transgression (see, e.g., *Richmond Redevelopment Agency* v. *Western Title Guaranty Co.* (1975) 48 Cal.App.3d 343, 347 [122 Cal.Rptr. 434]), we think in the defective condition of defendant's brief it betrays ill grace, or perhaps more appropriately bad form, to excoriate the court for failing to "deal in any manner with [counsel's] allegation that Mr. Ladd was not provided with effective assistance of counsel." Moreover, counsel's criticism is inaccurate inasmuch as the court, in its vacated opinion, expressly rejected any claim of "misconduct or impropriety of [defendant's] counsel."

Having resolved these procedural matters, we turn to the merits of the appeal.

■ The first claim of error is that the trial judge, pursuant to the stipulation of counsel, directed the court reporter not to report a segment of the instructions as he read them to the jury before closing arguments. These instructions, in their written form, are in the clerk's

transcript. All of the written instructions read to the jury were sent by the trial judge to the deliberating jury. By stipulating that the instructions need not be reported, defendant has waived any claim of error on appeal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 271, p. 4260.)

Furthermore, since counsel was present at the reading of the instructions, any improper deviation from the written version of the instructions could and presumably would have been noted and corrected at that time. Counsel on appeal does not maintain that the unreported oral instructions were erroneous in any particular. He does suggest that in conjunction with giving those instructions which are reported, the trial judge displayed a tendency to supplement the written instructions with extemporaneous comment; counsel acknowledges, however, that there is no error in any of the court's reported remarks. ■ Unless we assume that error was committed where none appears, we can find no possible prejudice to defendant in the stipulation and consequently no basis for a claim of inadequate assistance of counsel. (See *People* v. *Pope, supra,* 23 Cal.3d at p. 425; *People* v. *Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587].)

■ Error is also claimed in the court's failure specifically to tell the jury not to watch TV broadcasts or to read newspaper articles regarding the case. A newspaper reporter was present at a suppression hearing conducted immediately after the jury had been sworn and then dismissed for the day. The reporter told the court that only the fact that motions to suppress had been granted would appear in the media, not the nature of the motions. Defense counsel expressly withheld objection to "that much information going out just as long as there is no mention of the contents of the evidence that was suppressed."[2] The court offered to caution the jury on its return "not to watch the broadcasts or read the papers, . . ." As it turned out, no such instruction was given.

Immediately before the suppression hearing, the court had admonished the newly sworn jurors before excusing them for the day: " . . . You should not attempt to inform yourself about any subject matter brought up during the trial by reading articles or books and you should not try to consult people who you think are experts. The only thing you must use to decide the case is the knowledge that you brought with you

---

[2] We do not mean to suggest that the court could have prevented publication of any of the public proceedings even if counsel had so requested.

at the time you were sworn in as jurors and the evidence presented to you here in Court and the' instructions on the law that you will receive from me . . . ."

The quoted instruction is broad enough to cover the subject of defendant's concern and we presume the jury abided by it. (*People* v. *Ricketts* (1970) 7 Cal.App.3d 441, 446 [86 Cal.Rptr. 647].)

■ It is misconduct for jurors to receive evidence from sources other than in court, and if the defendant has been prejudiced thereby, a new trial should be granted. It is likewise misconduct for jurors to read newspaper accounts of a trial for which they are sitting as jurors (*People* v. *Lambright* (1964) 61 Cal.2d 482, 486 [39 Cal.Rptr. 209, 393 P.2d 409]; *People* v. *Craig* (1978) 86 Cal.App.3d 905, 919 [150 Cal.Rptr. 676]), and such misconduct creates a rebuttable presumption of prejudice. (*People* v. *Wong Loung* (1911) 159 Cal. 520, 529 [114 P. 829].) However, this presumption may be rebutted by the record. (*People* v. *Bullwinkle* (1980) 105 Cal.App.3d 82, 91 [164 Cal.Rptr. 163]; *People* v. *Kitt* (1978) 83 Cal.App.3d 834, 851 [148 Cal.Rptr. 447].)

■ Defendant has not shown that any juror in fact read any newspaper article or viewed any television news program concerning the case. Any assignment of juror misconduct is sheer speculation.

Reasonable people could not differ on the evidence presented in this case; defendant murdered his wife and it was no accident.

The judgment is affirmed.

Regan, J., and Evans, J., concurred.